UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

ALLEN ATKINS, #742687,

        Plaintiff,

v.

UNKNOWN HENNING, et al.,

        Defendants.
_____/

Case No. 2:22-cv-222

Hon. Paul L. Maloney
U.S. District Judge

## REPORT AND RECOMMENDATION

### I. Introduction

This Report and Recommendation (R&R) addresses Defendants' motion for summary judgment based on Plaintiff's failure to exhaust his administrative remedies. (ECF No. 31.)

Plaintiff — state prisoner Allen Atkins — filed suit pursuant to 42 U.S.C. § 1983 on November 28, 2022. In his verified complaint, Atkins alleged that while he was incarcerated at the Chippewa Correctional Facility (URF) in Kincheloe, Michigan, URF employees retaliated against him, violated his religious rights, and denied him due process. (ECF No. 1, PageID.7-8.) More specifically, Atkins alleged that after he threatened to pursue legal action against a non-party employee of the Michigan Department of Corrections (MDOC) and to file a grievance and misconduct appeal against Defendant Resident Unit Manager (RUM) Corey-Spiker, Defendants

Corey-Spiker, Corrections Officer (CO) Henning, and Sergeant (Sgt.) Belanger threatened him and destroyed his property. (*Id.*, PageID.4-6.)

On January 30, 2023, this Court issued a screening opinion finding that Atkins's complaint only stated claims of First Amendment retaliation against Defendants. (ECF No. 10, PageID.48, 55-56.) As such, only the following claims remain: (1) Atkins's claim that Corey-Spiker retaliated against him by threatening to ensure that his misconduct appeal was denied, and that his grievance was not processed; (2) Atkins's claim that Henning and Corey-Spiker retaliated against him by destroying his property; and (3) Atkins's claim that Bellanger retaliated against him by threatening to place Atkins in segregation, to destroy Atkins's property, to set Atkins up for a Class I misconduct ticket, and to transfer Atkins to a maximum-security prison.

Defendants now move for summary judgment, asserting that Atkins did not properly exhaust his administrative remedies. (ECF No. 31.) More specifically, Defendants argue that Atkins did not appeal any grievances through Step III of the grievance process, nor did he pursue any retaliation claims through the misconduct hearing process. (ECF No. 32, PageID.116-118.) Atkins did not respond to Defendants' motion. However, in his complaint, Atkins asserted that Defendants thwarted his attempts to exhaust his claims. (ECF No. 1, PageID.4.) Defendants did not address the issue in their brief in support of summary judgment.

The undersigned respectfully recommends that the Court deny Defendants' motion for summary judgment. Although Atkins alleged that Defendants rendered

his administrative remedies unavailable by threatening to set him up for misconduct tickets, destroy his property, and transfer him to a higher-security facility if he filed grievances or misconduct appeals against them, Defendants have not argued or established that administrative remedies were in fact available to Atkins to exhaust. As such, it is the undersigned's opinion that there are genuine issues of material fact precluding summary judgment. Those issues may be resolved by a jury or, upon Defendants' request, at a bench trial on exhaustion.

## II.   Factual Allegations

This Court previously summarized Atkins's factual allegations as follows:

> Plaintiff alleges that he was sexually assaulted by non-party Kinross Correctional Facility (KCF) Officer Shields on August 26, 2020. (Compl., ECF No. 1, PageID.4.) Following the alleged assault, Officer Shields issued Plaintiff a false Class I misconduct report for assault and battery. (*Id.*) That same day, non-party KCF Nurse Vieau also wrote Plaintiff a "false retaliatory Class II misconduct report." (*Id.*, PageID.4–5.) Plaintiff told Officer Shields, Nurse Vieau, and Officer Shields' non party supervisors that Plaintiff planned to seek legal action against Officer Shields. (*Id.*, PageID.4.)
>
> On August 29, 2020, Plaintiff was transferred to URF. (*Id.*)  On September 8, 2020, an administrative hearing was held on Plaintiff's Class I misconduct report, which had been issued by Officer Shields. (*Id.*)  Plaintiff was found not guilty because the Class I misconduct report was not reviewed within 24 hours of the time that it was written, as required by MDOC policy. (*Id.*; ECF No. 1-1, PageID.12.)
>
> On September 8, 2020, or sometime before September 16, 2020, Defendant Corey-Spiker served as the hearing officer on Plaintiff's Class II misconduct report by Nurse Vieau. (ECF No. 1, PageID.5.) Defendant Corey-Spiker "told Plaintiff that [the] team at URF don't help prisoners procute [sic] prison staff or 'get away' with assaulting prison staff, welcome to (URF), 'you are f\*\*ked!" (*Id.* (asterisks in original).  When Plaintiff told Defendant Corey-Spiker that he should be found not guilty, as he was in connection with the Class I misconduct, she replied that the finding was based on a technicality. (*Id.*)  In response to Plaintiff's threat to reverse her decision on appeal and file a grievance against her,

3

> Defendant Corey-Spiker told Plaintiff that she would demand that the appeal be denied, and that the grievance not be processed. (*Id.*) Plaintiff filed a grievance against Defendant Corey-Spiker, but never received a response. (*Id.*) [He also filed misconduct appeal papers without ever receiving a response.]
>
> Prior to December 1, 202[0], Defendant Henning destroyed Plaintiff's "legal and religious property" because Defendant Corey-Spiker ordered Defendant Henning to do so "'in retaliation' for assaulting an officer, then trying to seek state police to arrest the same officer, and [for] threatening to file a grievance on Defendant Corey-Spiker." (*Id.*) Plaintiff filed a grievance related to the destruction of his property. (*Id.*) Plaintiff contends that, as a result of the destruction, "Plaintiff was unable to practice his religion for a long period of time." (*Id.*, PageID.7.)
>
> Also prior to December 1, 2020, Defendant Bellanger gave Plaintiff a "direct order" to sign off on Plaintiff's grievance as resolved. (*Id.*, PageID.6.) Defendant Bellanger told Plaintiff that Defendant Corey-Spiker told Defendant Bellanger that Plaintiff tried to have an officer indicted on criminal charges, "which is not tolerated at URF." (*Id.*) Defendant Bellanger gave Plaintiff two options: (1) sign off on the grievance form and return to general population, or (2) get placed in segregation, have his property destroyed, and be transferred to Baraga Correctional Facility (AMF), a maximum-security prison. (*Id.*) Defendant Belanger also threatened to have an officer plant a set of URF blueprints in Plaintiff's cell during a cell search so that Plaintiff would be written up on a Class I Misconduct. (*Id.*) Plaintiff signed off on the grievance form. (*Id.*) Thereafter, Defendant Bellanger told Plaintiff that, if Plaintiff files a grievance against Defendant Bellanger, Plaintiff would be placed in segregation and transferred to AMF. (*Id.*, PageID.6–7.)

(ECF No. 10, PageID.44-45.)

### III. Summary Judgment Standard

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Kocak v. Comty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir. 2005). The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient

disagreement to require submission to a jury[1] or whether it is so one-sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

When, as here, the non-movant fails to respond to a motion for summary judgment, the Court must "examine the movant's motion for summary judgment to ensure that he has discharged his initial burden." *Stough v. Mayville Cmty. Sch.*, 138 F.3d 612, 614 (6th Cir. 1998) (citing *Carver v. Bunch*, 946 F.2d 451, 455 (6th Cir. 1991)).

IV. **Exhaustion**

A prisoner's failure to exhaust his administrative remedies is an affirmative defense, which Defendants have the burden to plead and prove. *Jones v. Bock*, 549 U.S. 199, 212-16 (2007). "[W]here the moving party has the burden—the plaintiff on

---

1   If defendants move for summary judgment on the basis of exhaustion under the PLRA, and the court determines that there is a genuine issue of material fact, the issue need not be submitted to a jury. *Lee v. Willey*, 789 F.3d 673, 678 (6th Cir. 2015). Instead, the court may conduct a bench trial to resolve the issue. (*Id.*) In a bench trial on exhaustion, the defendants must show that the plaintiff failed to exhaust his administrative remedies by a preponderance of the evidence. *Id.* at 677 (citing *Jones v. Bock*, 549 U.S. 199, 218 (2007)) ("Failure to exhaust administrative remedies is an affirmative defense, which the defendant has the burden to plead and prove by a preponderance of the evidence."); *Richards v. Perttu*, No. 2:20-CV-76, 2022 WL 842654, at *1 (W.D. Mich. Mar. 22, 2022) (affirming a magistrate judge's ruling that the preponderance of the evidence standard applies in a bench trial on exhaustion).

5

a claim for relief or the defendant on an affirmative defense—his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986). The Sixth Circuit has repeatedly emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Cockrel v. Shelby Cnty. Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

Pursuant to the applicable portion of the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must exhaust his available administrative remedies. *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Booth v. Churner*, 532 U.S. 731, 733 (2001). A prisoner must first exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741; *Knuckles El v. Toombs*, 215 F.3d 640, 642 (6th Cir. 2000); *Freeman v. Francis*, 196 F.3d 641, 643 (6th Cir. 1999). To properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Jones*, 549 U.S. at 218-19; *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). "Compliance with prison grievance procedures, therefore, is all that is

required by the PLRA to 'properly exhaust.'" *Jones*, 549 U.S. at 218-19. In rare circumstances, the grievance process will be considered unavailable where officers are unable or consistently unwilling to provide relief, where the exhaustion procedures may provide relief, but no ordinary prisoner can navigate it, or "where prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Ross v. Blake*, 578 U.S. 632, 644 (2016).

"Beyond doubt, Congress enacted [Section] 1997e(a) to reduce the quantity and improve the quality of prisoner suits." *Porter*, 534 U.S. at 524. In the Court's view, this objective was achieved in three ways. First, the exhaustion requirement "afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." *Id*. at 525. Second, "the internal review might 'filter out some frivolous claims.'" *Id*. (quoting *Booth*, 532 U.S. at 737*)*. And third, "adjudication could be facilitated by an administrative record that clarifies the contours of the controversy." *Id*. When institutions are provided adequate notice as required under the PLRA, the opportunity to address the claims internally furthers the additional goals of limiting judicial interference with prison administration. *Baker v. Vanderark*, 1:07-cv-004, 2007 WL 3244075, *5 (W.D. Mich., Nov. 1, 2007).

Michigan Dept. of Corrections (MDOC) Policy Directive (P.D.) 03.02.130 (effective March 18, 2019) sets forth the applicable grievance procedures for prisoners in MDOC custody at the time relevant to this complaint. Inmates must first attempt

7

to informally resolve a grievable issue within two business days of becoming aware of the issue, unless prevented by circumstances beyond his or her control. *Id.* at ¶ Q. If informal resolution is unsuccessful, the inmate may proceed to Step I of the grievance process and submit a completed grievance form within five business days of the attempted informal resolution. *Id.* at ¶¶ Q, W. The inmate submits the grievance to a designated Grievance Coordinator, who assigns it to a respondent. *Id.* at ¶ W. The P.D. also provides the following directions for completing grievance forms: "The issues should be stated briefly but concisely. Information provided is to be limited to the facts involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included." *Id.* at ¶ S (emphasis in original).

If the inmate is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II by obtaining an appeal form within ten business days of the response, or if no response was received, within ten days after the response was due. MDOC P.D. 03.02.130 at ¶¶ U, DD. The respondent at Step II is designated by the policy, *e.g.,* the regional health administrator for medical care grievances. *Id.* at ¶ FF.

If the inmate is still dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal to Step III using the same appeal form. *Id.* at ¶¶ U, HH. The Step III form shall be sent within ten business days after receiving the Step II response, or if no Step II response was received, within ten business days

8

after the date the Step II response was due. *Id.* The Grievance and Appeals Section is the respondent for Step III grievances on behalf of the MDOC director. *Id.* at ¶ II.

When the grievance procedures are not available because the issue presented is non-grievable, exhausting those procedures is not required. It is well-established that a prisoner "cannot be required to exhaust administrative remedies regarding non-grievable issues." *Figel v. Bouchard*, 89 F. App'x 970, 971 (6th Cir. 2004); *Mays v. Kentucky Dept. of Corrections*, 2018 WL 4603153, at *3 (W.D. Ky. Sept. 25, 2018) ("It is beyond debate that an inmate cannot be required to exhaust administrative remedies regarding non-grievable issues."); *Reeves v. Hobbs*, 2013 WL 5462147 (W.D. Ark. Sept. 3, 2013) ("Defendants cannot treat a complaint as non-grievable, and therefore not subject to the grievance procedure, and then turn around and maintain the claim fails because [the plaintiff] failed to follow the grievance procedure. As the well-known proverb states, they cannot have their cake and eat it too."). However, when other administrative remedies are available, the prisoner is required to exhaust those remedies prior to filing a federal lawsuit. For example, when an inmate's complaint arises out of a decision made in a misconduct hearing, whether Class I, Class II, or Class III,[2] the inmate must exhaust that claim through the misconduct appeal process. MDOC P.D. 03.02.130 at ¶ J(9), (11).

---

[2]   Violations of written rules within the MDOC are classified as either Class I, Class II or Class III misconducts. Class I consists of the most severe violations, and Class III consists of the least severe. While Class I misconducts are considered "major" misconducts and are "subject to all hearing requirements set forth in MCL 791.252", Class II and III misconducts are considered "minor" misconducts and are "subject to all requirements currently set forth in Department Administrative Rules

9

When prison officials waive enforcement of these procedural rules and instead consider a non-exhausted claim on its merits, a prisoner's failure to comply with those rules will not bar that prisoner's subsequent federal lawsuit. *Reed-Bey v. Pramstaller*, 603 F.3d 322, 325 (6th Cir. 2010). The Sixth Circuit has explained:

> [A] prisoner ordinarily does not comply with MDOCPD 130—and therefore does not exhaust his administrative remedies under the PLRA—when he does not specify the names of each person from whom he seeks relief. *See Reed-Bey v. Pramstaller*, 603 F.3d 322, 324-25 (6th Cir. 2010) ("Requiring inmates to exhaust prison remedies in the manner the State provides—by, say, identifying *all* relevant defendants—not only furthers [the PLRA's] objectives, but it also prevents inmates from undermining these goals by intentionally defaulting their claims at each step of the grievance process, prompting unnecessary and wasteful federal litigation process."). An exception to this rule is that prison officials waive any procedural irregularities in a grievance when they nonetheless address the grievance on the merits. *See id.* at 325. We have also explained that the purpose of the PLRA's exhaustion requirement "is to allow prison officials 'a fair opportunity' to address grievances on the merits to correct prison errors that can and should be corrected to create an administrative record for those disputes that eventually end up in court." *Id.* at 324.

*Mattox v. Edelman*, 851 F.3d 583, 590-91 (6th Cir. 2017).[3]

## V.    Analysis

Defendants aver that Atkins failed to pursue any grievances through Step III of the MDOC's grievance process, and that he failed to pursue his claim related to the

---

and policy directives for 'minor' misconducts." MDOC P.D. 03.03.105 ¶ B (eff. date 07/01/18).

[3]   In *Mattox*, the Sixth Circuit held that a prisoner may only exhaust a claim "where he notifies the relevant prison . . . staff" regarding the specific factual claim "giving the prison staff a fair chance to remedy a prisoner's complaints." *Id.* at 596. For example, grieving a doctor about his failure to give cardiac catheterization failed to grieve the claim that the doctor erred by not prescribing Ranexa.

September of 2020 misconduct hearing through the misconduct appeal process. (ECF No. 32, PageID.116-117.) Defendants therefore contend that Atkins failed to exhaust his administrative remedies, and that the Court should dismiss his case. (*Id.*, PageID.118.) But, as mentioned above, Atkins alleged that Defendants prevented him from exhausting his administrative remedies in his verified complaint.

Specifically, Atkins averred that when he threatened to file a grievance and misconduct appeal against RUM Corey-Spiker in September of 2020, RUM Corey-Spiker told Atkins that she would ensure that the appeal was denied, and that the grievance was not processed. (ECF No. 1, PageID.5) Atkins said that he then filed the Step I grievance and misconduct appeal, but that he never received a response to either. Atkins surmised that Corey-Spiker had followed through on her threats. (*Id.*)

Later, Atkins said that CO Henning destroyed some of his property in retaliation for Atkins's threat to file a grievance against Corey-Spiker. (*Id.*) And after one of Atkins's Step I grievances was finally processed, Atkins said that Sgt. Belanger called him into the URF control center and told him to sign off on the grievance, indicating that it had been resolved. (*Id.*, PageID.6.) Sgt. Belanger allegedly told Atkins that if he did not sign off on the grievance, Belanger would put him in segregation, destroy all of his property, and transfer him to a maximum-security prison. When Atkins told Belanger that she could not transfer him to a maximum-security prison because he does not have the requisite security classification, Belanger allegedly threatened to plant contraband in Atkins's cell in order to increase his classification and get him transferred. (*Id.*)

As set forth above, there are rare circumstances in which the grievance process will be considered unavailable because officers are unable or consistently unwilling to provide relief, the administrative remedies are unnavigable, or "where prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Ross*, 578 U.S. at 644 (emphasis added). Atkins alleges that RUM Corey-Spiker interfered with the processing of at least one grievance and one misconduct appeal, and he alleges that he was repeatedly threatened and retaliated against for filing or threatening to file grievances. Despite the fact that these allegations of machination and intimidation form the basis of his remaining retaliation claims, Defendants did not address the allegations at all in their exhaustion-based motion for summary judgment.

Ultimately, failure to exhaust is an affirmative defense; Defendants bear the burden of establishing that Atkins failed to exhaust the available administrative remedies. *Jones*, 549 U.S. at 212-16 (2007). When a plaintiff "'contends that he was prevented from exhausting his remedies,' the defendant must 'present evidence showing that the plaintiff's ability to exhaust was not hindered.'" *Lamb v. Kendrick*, 52 F.4th 286, 295 (6th Cir. 2022) (quoting *Surles v. Andison*, 678 F.3d 452, 457 n.10 (6th Cir. 2012)). In the undersigned's opinion, Defendants have not discharged their burden.

## VI. Recommendation

The undersigned respectfully recommends that the Court deny Defendants' motion for summary judgment. Although Atkins alleged that Defendants rendered

his administrative remedies unavailable by threatening to set him up for misconduct tickets, destroy his property, and transfer him to a higher-security facility if he filed grievances or misconduct appeals against them, Defendants have not argued or established that administrative remedies were in fact available to Atkins to exhaust. As such, it is the undersigned's opinion that there are genuine issues of material fact precluding summary judgment. Those issues may be resolved by a jury or, upon Defendants' request, at a bench trial on exhaustion.

If the Court accepts this recommendation, Atkins's retaliation claims against Defendants Corey-Spiker, Henning, and Belanger will remain.


Dated:   January 2, 2024                                          /s/ *Maarten Vermaat*
                                                                  MAARTEN VERMAAT
                                                                  U. S. MAGISTRATE JUDGE


## NOTICE TO PARTIES

Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b).  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to file timely objections may constitute a waiver of any further right of appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).